NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JEFFREY BIBBS,                          :
                                        :   Civil Action No. 02-2944 (JAG)
                Petitioner,             :
                                        :
        v.                              :   **OPINION**
                                        :
TERRY MOORE,                            :
                                        :
                Respondent.             :


**APPEARANCES:**

Petitioner pro se                  Counsel for Respondents
Jeffrey Bibbs                      Paul H. Heinzel
East Jersey State Prison           Deputy Attorney General
#213625                            Division of Criminal Justice
Lock Bag-R/3-W-246                 Appellate Bureau
Rahway, NJ 07065                   P.O. Box CN 086
                                   Trenton, NJ 08625


**GREENAWAY, JR.,** District Judge

        Petitioner Jeffrey Bibbs, a prisoner currently confined at

East Jersey State Prison, has submitted a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254.  The respondent is

Warden Terry Moore.

        For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division, on direct appeal.[1]

> According to the evidence presented by the State, when Mrs. Conway drove into her driveway, she observed a tall male standing in the garage.  As she walked up the driveway, the man turned around and began to exit the garage.  Mrs. Conway went into the house and awakened her husband, Deputy Police Chief William Conway of the New Brunswick police.  Conway left the house in his wife's car and drove to an apartment complex where he first saw the defendant, who fit the description given by his wife.  He caught up with the defendant on the grounds of Douglass College, identified himself as a police officer and arrested defendant.  The officer was carrying a walkie-talkie.

> Conway spread-eagled defendant against the car.  The Chief's service weapon was on the floor of the car on the driver's side, with the door completely open.  Defendant grabbed the Chief's service revolver, swung around, pointed it at Conway and said, "I'll kill you, you mother fucker."  According to Conway, defendant pointed the weapon right at his stomach and pulled the trigger, but did not know how to activate the gun's safety.  Conway then hit defendant over the head with the walkie-talkie.

> Defendant then threw the gun into some bushes and ran away with Conway in pursuit.  He was apprehended by Lt. Rivera of the Rutgers University Police who

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

eventually flushed defendant from some bushes at
gunpoint.

     Rivera ordered defendant to walk to the patrol car
and placed his hands on the automobile's hood.
Officers Semler and Boiler of the New Brunswick Police
Department then arrived.  Just before defendant was
being patted down, he made a lunge to his left with his
left arm.  Semler threw defendant to the ground.

(Answer, Ex. 5.)

B.   <u>Procedural History</u>

Petitioner was found guilty of ten of the twelve counts in

Indictment No. 1776-10-87, including:  second degree burglary

while armed, fourth degree resisting arrest, first degree armed

robbery, second degree attempted murder, second degree aggravated

assault, third degree aggravated assault, fourth degree

aggravated assault, second degree escape, second degree

possession of a weapon for an unlawful purpose, and third degree

unlawful possession of a weapon.  In a separate trial, Petitioner

was also found guilty of the single charge in Indictment No. 296-

2-87, possession of a handgun by a person previously convicted of

a crime.

Petitioner was sentenced to an aggregate term of life

imprisonment with a 25-year parole disqualifier.

On direct appeal, in an Opinion filed on October 23, 1990,

the Appellate Division affirmed with one exception:  the

Appellate Division found that there was no evidence that

Petitioner was armed while burglarizing the Conway household and,

therefore, amended the conviction for second degree burglary while armed to a conviction for third degree burglary.  In an Order filed February 21, 1991, the Supreme Court of New Jersey denied certification.  See State v. Bibbs, 126 N.J. 319 (1991).

Petitioner timely filed a motion for post-conviction relief, which was denied by Order dated July 27, 1992.  In an opinion filed December 1, 1994, the Appellate Division affirmed the denial of post-conviction relief.  The Supreme Court of New Jersey denied certification.  See State v. Bibbs, 142 N.J. 517 (1995).

Petitioner filed a second motion for post-conviction relief which was denied by order filed August 1, 1996.  In an opinion filed October 14, 1998, the Appellate Division affirmed the denial of the motion as time-barred as well as on the merits. However, it remanded the matter to the trial court as it was unable to review one claim raised in Petitioner's pro se supplemental brief -- that his Graves Act extended term was improper because his 1973 conviction for armed robbery, which served to trigger the application of N.J. Stat. Ann. § 2C:43-6c, did not amount to a second Graves Act conviction.  By Order filed January 21, 1999, the Supreme Court of New Jersey denied Petitioner's petition for certification.

At the conclusion of the remand proceedings on the sentencing issue, the trial court ruled that the State had not

met its burden of demonstrating that the 1973 incident involved a firearm under the Graves Act.  Thus, the court vacated the Graves Act extended term.  At the subsequent re-sentencing hearing, the court found that Petitioner was eligible for extended term sentencing as a persistent offender, pursuant to N.J. STAT. ANN. § 2C:44-3 and found that the imposition of an extended term was necessary for protection of the public.  The court imposed a life sentence with 25 years parole ineligibility for the first degree armed robbery conviction.  Petitioner's motion for reconsideration of the sentence was denied on June 30, 2000.

Petitioner again appealed.  By opinion dated January 2, 2002, the Appellate Division affirmed.  On March 6, 2002, the Supreme Court of New Jersey denied Petitioner's petition for certification.  State v. Bibbs, 171 N.J. 442 (2002).

This timely petition followed.  Petitioner challenges both his conviction and his sentence.  Respondent has answered, and Petitioner has filed a Traverse in support of the Petition. Accordingly, this matter is now ripe for determination.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State

court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a

legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.

To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.   ANALYSIS

A.   Defects in Grand Jury Process

Petitioner alleges that during the Grand Jury indictment process the prosecutor improperly told the grand jury that Petitioner pointed a gun at Chief Conway and that Chief Conway's testimony did not provide sufficient evidence for an indictment for armed robbery, attempted murder, second degree burglary, and aggravated assault.

On direct appeal, the Appellate Division found this claim to be "clearly without merit."  (Answer, Ex. 5.)

The Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the states.  Alexander v. Louisiana, 405 U.S. 625, 633 (1972).  Thus, any claim of defect in a state grand jury proceeding is a claim of a state-law error that does not raise federal constitutional concerns unless it rises to the level of a due process deprivation.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Where any error in a state grand jury proceeding is rendered harmless by a subsequent petit jury verdict, there is no due process deprivation.  See, e.g., Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); United States v. Mechanik, 475 U.S. 66, 72-73 (1986) (involving a violation of Fed.R.Crim.P. 6(d)).

Here, the petit jury found Petitioner guilty of the crimes charged beyond a reasonable doubt, rendering harmless any error in the state grand jury proceedings.  Petitioner is not entitled to relief on this claim.

B.   Prosecutorial Misconduct

During summation, the prosecutor remarked as follows:

What is the reasonable conclusion that you would draw when a guy sticks a gun in someone else's stomach and says, "I'm going to kill?"  Does he mean it?  Is that a substantial step?  Let's look at it another way.  The Defense doesn't deny that the defendant grabbed the gun and took it, and they don't deny that he said the words that he did.

(10T at 77.)   In response to Petitioner's objection, the trial court ruled that the remark was fair comment on the defense's argument during the summation that Petitioner took the gun from Conway but then only fled with it.   (10T at 77-79.)   The court also noted that it would instruct the jury that Petitioner bore no burden of proof and denied his guilt.   The court so instructed the jury at both the close of summation and during the formal jury charge.   (10T at 87; 11T at 47.)

Petitioner contends that the prosecutor's remarks during summation violated Petitioner's Fifth Amendment right not to testify.

On direct appeal, the Appellate Division found this claim to be "clearly without merit."

The Supreme Court of the United States has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.   But, while he may strike hard blows, he is not at liberty to strike foul ones.   It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...   Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).   "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.   Prosecutors sometime breach their

10

duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence." <u>United States v. Young</u>, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

<u>Id.</u> at 18.

Under Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974)). In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. <u>Darden</u>, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions,

and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, in both his opening (9T at 15) and closing statements, defense counsel questioned the credibility of Chief Conway, whose testimony differed from his written report. At both times, defense counsel admitted that Petitioner took the gun, turned around, and cursed at Chief Conway. The prosecutor's comments were fairly responsive to comments by defense counsel. Moreover, the trial court correctly admonished the jury that the defendant denied his guilt and bore no burden of proof.

It cannot be said that the conclusion of the Appellate Division was contrary to or an unreasonable application of governing Supreme Court law. Accordingly, Petitioner is not entitled to relief on this claim.

C.   Improper Bolstering of Witness

Petitioner contends that the prosecutor improperly bolstered Chief Conway's testimony by asking him about his 37 years as a police officer, being close to retirement, and need to retire with honors to collect his full pension. The prosecutor then asked Chief Conway whether he would lie and risk losing his pension.

Relying on state precedents, the Appellate Division ruled that the questioning was error, but found the questioning to be harmless error beyond a reasonable doubt.  (Answer, Ex. 5.)

12

The violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  United States v. Agurs, 427 U.S. 97, 108 (1976).

Here, it is undisputed that Petitioner grabbed the gun, turned around, said something to Chief Conway, and then ran away.  The Appellate Division has found that the error in permitting questioning to bolster the witness's credibility about what happened when Petitioner turned and spoke to him was harmless beyond a reasonable doubt.  That finding is entitled to deference here.  Petitioner has not rebutted the presumption of correctness by clear and convincing evidence, as required by § 2254(e)(1).  Nor has Petitioner established that the questioning deprived him of a fair trial.  Petitioner is not entitled to relief on this claim.

D.   <u>Sufficiency of the Evidence</u>

Petitioner contends that there is not sufficient evidence to sustain his convictions for attempted murder,[2] armed robbery,[3]

---

[2] Under New Jersey law, a person is guilty of murder if he knowingly or purposely "causes death or serious bodily injury resulting in death."  N.J. STAT. ANN. § 2C:11-3.  A person is guilty of an attempt to commit a crime, N.J. STAT. ANN. § 2C:5-1, if he:

   (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;

   (2) When causing a particular result is an element of the crime, does ... anything which the purpose of causing such result without further conduct on his part; or

   (3) Purposely does ... anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

[3] Under New Jersey law, a person is guilty of armed robbery under N.J. STAT. ANN. § 2C:15-1, if, in the course of committing a theft, he:

   (1) Inflicts bodily injury or uses force upon another; or

   (2) Threatens another with or purposely puts him in fear of immediate bodily injury; ...

   An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

   (b) Grading.  Robbery ... is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or

14

and aggravated assault.[4]  Specifically, he states that there is no evidence that he attempted to activate the safety or pull the trigger on the gun.

On direct appeal, the Appellate Division found this claim to be "clearly without merit."

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As

---

attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

[4] Under New Jersey law, N.J. STAT. ANN. § 2C12-1, a person is guilty of aggravated assault if he:

(1) Attempts to cause serious bodily injury to another, or ...

(2) Attempts to cause ... bodily injury to another with a deadly weapon; or ...

(4) Knowingly under circumstances manifesting extreme indifference to the value of human life points a firearm, ... at or in the direction of another, whether or not the actor believes it to be loaded ... .

15

noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Contrary to Petitioner's characterization of Chief Conway's testimony, he testified that Petitioner took the revolver out of its holster and pointed the gun into Chief Conway's stomach, stating "I'll kill you, you mother fucker," that Chief Conway saw Petitioner do "something" with the gun but could not specifically say that he saw him disengage the safety mechanism or pull the trigger, that the revolver was equipped with an unusual safety, which was engaged, and that before Petitioner was able to de-activate the safety and fire, Chief Conway struck him over the head with a walkie-talkie, at which time Petitioner fled.  (9T at 52-54, 89-90, 99-100, 107-08, 114-118.)

This testimony is sufficient to establish the elements of the crimes of attempted murder, armed robbery, and aggravated assault, as defined under New Jersey law.  The decision of the Appellate Division is not contrary to or an unreasonable application of established Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

E.   Jury Instructions

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

Where such a constitutional error has occurred, it is
subject to "harmless error" analysis.  <u>Smith v. Horn</u>, 120 F.3d at
416-17; <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999).  "[I]f
the [federal habeas] court concludes from the record that the
error had a 'substantial and injurious effect or influence' on
the verdict, or if it is in 'grave doubt' whether that is so, the
error cannot be deemed harmless."  <u>Id.</u> at 418 (citing <u>California
v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a challenged
instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

<u>Middleton v. McNeil</u>, 124 S.Ct. 1830, 1832 (2004) (internal
quotations and citations omitted).

    1.   <u>Instruction on Attempted Murder</u>

Petitioner contends that the instruction on attempted murder
was erroneous, where the jury was allowed to speculate on the
issue of serious bodily injury.  In his brief on direct appeal,
Petitioner more specifically challenged the trial court's
instruction that a person is guilty of attempted murder if he has
the purpose to take a life or cause serious bodily injury
resulting in death.  (Answer, Ex. 8 at 3-4.)  Apparently,
Petitioner believes that the instruction should have stated that

18

a person is guilty of attempted murder only if he had the purpose to take a life.

On direct appeal, the Appellate Division found this claim to be "clearly without merit."

The instructions on attempted murder are lengthy and need not be reproduced here.  (Answer, Ex. 45 at 23-28; Ex. 46 at 38-44.)  Based upon the elements of the crimes of murder and attempt, see supra note 2, this Court can discern no error of state law and, thus, no violation of due process.  Petitioner is not entitled to relief on this claim.

### 2.   Instruction on Armed Robbery

The indictment charged Petitioner, in Count Three, with armed robbery, as follows:

> The Grand Jurors of the State of New Jersey, for the County of Middlesex upon their oaths present that JEFFREY BIBBS, on or about the 3rd day of December 1986, in the City of New Brunswick, County of Middlesex, aforesaid, and within the jurisdiction of this Court, in the course of committing a theft, did attempt to kill William Conway by use of a deadly weapon; contrary to the provisions of N.J.S.A. 2C:15-1 and against the peace of this State, the Government and dignity of the same.

(Answer, Ex.1 at Da54.)

In its instructions to the jury on this charge, the trial court went through the elements of robbery, then the separate elements of armed robbery, and finally the necessary element of the charged "attempt to kill" Chief Conway.  (Answer, Ex. 45 at 18-23.)  In response to a request from the jury, the court re-

19

instructed the jury on the crime of armed robbery during the deliberations.  (Answer, Ex. 46 at 10-15.)  In its re-instructions, the court again emphasized that it was alleged that Petitioner attempted to kill Chief Conway.  In addition, the verdict form required the jury to make a determination as to whether Petitioner tried to kill Chief Conway.  (Answer, Ex. 46 at 45.)

Petitioner states that the instruction on armed robbery included "threatening to kill," which was not included in the indictment or charged to the jury.

In his motion for post-conviction relief, Petitioner challenged the armed robbery instruction on another ground.  The Appellate Division found that "[t]he trial judge in this case properly charged the jury."  (Answer, Ex. 10.)

This Court can discern no error in the instruction. Moreover, to the extent there is any error, taken as a whole, the jury charge and the verdict form required the jury to find an "attempt to kill," as charged, in order to find the defendant guilty of armed robbery.  There was no violation of due process. Petitioner is not entitled to relief on this claim.

F.   Appellate Division Mischaracterization of Testimony

In his motion for post-conviction relief, Petitioner asserted that his appellate counsel provided ineffective assistance because he failed to make a motion to the Appellate

20

Division for reconsideration of the judgment based upon an alleged mischaracterization of Chief Conway's testimony. Specifically, Petitioner alleged that the Appellate Division incorrectly stated that "According to Conway, defendant pointed the weapon right at his stomach and pulled the trigger, but did not know how to activate the gun's safety."  Reviewing Chief Conway's entire testimony, the Appellate Division determined that it had accurately characterized Chief Conway's testimony, and thus there was no error in appellate counsel's failing to move for reconsideration.  (Answer, Ex. 10.)  Specifically, the Appellate Division pointed to Chief Conway's testimony that the only reason Petitioner did not fire the gun was because "he did not know how to activate the safety mechanism which would activate the weapon.  So he could have fired that weapon.  It's an automatic weapon."

Petitioner repeats here the allegation that the Appellate Division mischaracterized Chief Conway's testimony, although he does not couch the challenge in terms of ineffective assistance of counsel.

Pursuant to 28 U.S.C. § 2254(e0(1), state court determinations of factual issues are presumed to be correct, unless the Petitioner rebuts the presumption of correctness by clear and convincing evidence.  Here, Petitioner has not rebutted the presumption of correctness by clear and convincing evidence.

Nor, even if this characterization of the testimony were found to be incorrect, would Petitioner be entitled to any relief based upon such error.  Petitioner has made separate challenges to his convictions of various offenses that must stand or fall on their own.  Petitioner is not entitled to relief on this claim.

G.   Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance from his counsel on appeal of his motion for post-conviction relief.[5]  Ineffective assistance of counsel in state post-conviction relief proceedings is not a ground for relief in federal habeas corpus.  See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").  Accordingly, Petitioner is not entitled to relief on this claim.

F.   Illegal Sentence

At the time of the original trial, the state gave notice of its intent to seek an extended term as both a persistent offender under N.J. Stat. Ann. § 2C:44-3 and under the Graves Act, N.J. Stat. Ann. § 43-6c.  (Answer, Ex.48 at 11-14.)

Following a successful challenge to his original sentence, the trial court re-sentenced Petitioner 13 years after the

_____

[5] Respondents contend that Petitioner has procedurally defaulted this claim in state court, but also argue that it is not a ground for relief in federal habeas corpus.

22

original sentencing.  In preparation for the sentencing hearing, the trial court reviewed with all parties and counsel the materials he had relevant to the sentencing decision, including the prosecutor's prior motion for an extended term and Petitioner's response to that, and invited submission of supplemental materials.  (Answer, Ex. 57 at 29.)  At the re-sentencing hearing, the issue of whether a discretionary extended term should be imposed was litigated thoroughly and there was no suggestion of lack of notice.  (Answer, Ex. 59.)  The trial judge determined that Petitioner was eligible for an extended term as a persistent offender, based upon his prior convictions, and imposed a life term with a 25-year parole disqualifier.

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency."  See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

1.   <u>Apprendi Violation</u>

Petitioner contends that the sentencing judge violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), by imposing a sentence based upon facts not considered by the jury.  The Appellate Division found Petitioner's reliance on <u>Apprendi</u> "misplaced," because the trial judge imposed sentence based upon prior convictions, which <u>Apprendi</u> permits.  (Answer, Ex. 30.)

In <u>Apprendi</u>, the Supreme Court specifically held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  Thus, as the Appellate Division found, the imposition of an extended term based upon the fact of prior convictions is not unconstitutional.  Petitioner is not entitled to relief on this claim.

2.   <u>Failure to Give Notice of Intent to Seek Extended Term</u>

Petitioner contends that the state failed to give proper notice of its intent to seek an extended term.  The Appellate Division also rejected this challenge to Petitioner's re-sentencing.

> Defendant received notice of the State's intention to seek an extended term under the second Graves Act provision and as a persistent offender when he was originally sentenced in 1988.  No further notice was required when defendant was resentenced.  He was well aware that he was subject to an extended term sentence.

(Answer, Ex. 30.)

24

There was no suggestion at the time of the re-sentencing that Petitioner had not received the proper notice.  The issue of whether an extended term should be imposed was thoroughly litigated.  Petitioner had been on notice of the state's intent to seek an extended term since the time of his original trial, and before the re-sentencing he had been reminded of the issue and had been invited to brief the issue for the court.  Rule 3:21-4(e) merely requires the State to provide notice of its intent to seek an extended term "within fourteen days of the entry of defendant's guilty plea or of the return of the verdict."  Petitioner does not dispute that he received notice as required by the applicable Rule.  There was no lack of notice or deprivation of due process here.  Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further."  <u>Miller-El v.</u>

<u>Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of
the denial of a constitutional right.  Accordingly, no
certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be
denied.  An appropriate order follows.


     S/Joseph A. Greenaway, Jr.     
     JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: October 31, 2005